IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NASHAAT DAOUD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  22 C 986 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| GEN. KENNETH F. MCKENZIE JR. and | ) | |
| LLOYD JAMES AUSTIN III, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant's motion to dismiss the First Amended Complaint is granted for the reasons stated below.

**BACKGROUND**

Plaintiff, Nashaat Daoud, is a 70-year-old experienced interpreter, fluent in Iraqi, Levantine, and Egyptian Arabic. (ECF No. 12, 1st Am. Compl. ¶¶ 3, 6; ECF No. 16, Pl.'s Resp. Defs.' Mot. Dismiss at 1.)  He gained interpreting experience during his time with the Transportation Security Administration ("TSA") at O'Hare International Airport from 2002 to 2007, assisting TSA screening agents in communicating with travelers who do not speak English, and during a deployment to Iraq from 2007 to 2010, when he performed interpreter services during a troop surge.  (1st Am. Compl. ¶¶ 6-7.)

In February 2021, Daoud again sought interpreting work in Iraq and applied for an interpreter position with Valiant Integrated Services ("Valiant").  (*Id.* ¶ 10.)  But because Daoud was older than 65, Valiant denied him employment that would entail deployment to Iraq, due to a regulation promulgated by the United States Central Command ("Central Command") in April 2020.  (*Id.* ¶¶ 4, 9-10.)   Central Command is a branch of the Department of Defense that administers an area of responsibility ("AOR") consisting of Iraq and twenty other nations.  (*Id*. ¶ 4; ECF No. 15, Defs.' Mem. Supp. Mot. Dismiss at 2.)  The regulation at issue, to which the parties refer as "MOD-15," prescribed fitness standards for employment entailing deployment to the AOR and provided in pertinent part: "Given the direct threat presented by COVID-19 and the significant risk of harm, fitness now includes people being under the age of 65."  (ECF No. 12-1, 1st Am. Compl., Ex. A, at 5.)  In January 2022, Central Command replaced MOD-15 with MOD-16, which eliminated the age restriction for fitness and replaced it with a COVID-19 vaccination requirement for all persons seeking deployment to the AOR.  (1st Am. Compl. ¶ 11.)

Daoud brought this suit against Lloyd James Austin III, the United States Secretary of Defense, and Kenneth F. McKenzie Jr., the now-former commander of Central Command. Daoud alleges that he was denied employment due to defendants' enforcement of MOD-15 and that MOD-15 was not rationally related to a legitimate government interest. In Daoud's original complaint, filed on February 24, 2022, he did not acknowledge the fact that MOD-16 had replaced MOD-15 the previous month; rather, he sought an order (1) declaring that defendants' "continued enforcement" of MOD-15 violated his Fifth Amendment equal-protection rights and (2) requiring defendants in their official capacities to permit employers to offer interpreter deployment to the AOR for persons over age 65, in addition to an award of costs, expenses, and reasonable attorneys' fees. The government moved to dismiss the original complaint on mootness grounds due to the fact that MOD-16 had superseded MOD-15. It also argued that the deferential rational-basis standard applied to the regulation and that Daoud had failed to allege facts that could overcome that standard. In response, Daoud sought, and was granted, leave to file an amended complaint. He continues to assert that the enforcement of MOD-15 violated his Fifth Amendment equal-protection rights and to seek declaratory and injunctive relief but has added a prayer for an award of back pay. (1st Am. Compl. at 6.)

Defendants (to whom the Court will refer collectively as the "government") move to dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).[1] The motion is fully briefed.[2]

---

[1] The government's "Memorandum in Support of Defendants' Motion to Dismiss First Amended Complaint," ECF No. 15, was docketed as a motion, and the Court construes it as a motion because the parties so treated it and a separate motion to dismiss was not filed. As discussed below, although the government invokes Rule 12(b)(1) and Rule 12(b)(6) in its opening brief, it abandons any reliance on Rule 12(b)(1) in its reply brief. Therefore, the Court considers Rule 12(b)(6) as the only basis for the motion.

[2] The government includes in its reply brief an argument pertaining to Lieutenant Colonel Andrew B. Hall, an individual who the government says is a surgeon who was the primary drafter of MOD-15 and MOD-16. Two days after the government filed its reply brief, it filed a two-page declaration by Dr. Hall, (ECF No. 18), with no corresponding motion for leave to file it or any explanation as to why the Court can consider it on a motion to dismiss. When ruling on a motion to dismiss, the court may consider "documents attached to the complaint, documents central to the complaint and referred to in it, and information that is properly subject to judicial notice." *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 n.2 (7th Cir. 2017) (internal punctuation and citation omitted); Fed. R. Civ. P. 12(d) (if, on a motion under Rule 12(b)(6), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Dr. Hall's declaration fits within none of these categories. It is therefore stricken, and the Court has not considered it or the government's argument about Dr. Hall in ruling on the motion to dismiss.

**DISCUSSION**

The government first contends that "[t]his case should be dismissed" as moot under Rule 12(b)(1) because MOD-15's age restriction was replaced with MOD-16's vaccination requirement a month before the case was filed. (Defs.' Mem. Supp. Mot. Dismiss at 4.) The government points out that MOD-16 does not serve as a barrier to employment for Daoud, who alleges that he is fully vaccinated and boosted, (1st Am. Compl. ¶ 15). In response, Daoud says that "any claim [he] may have had for injunctive relief while MOD 15 was in effect is now barred following MOD 16's enactment," but argues that his damages claim remains a live controversy and that his request for a declaratory judgment should survive as a predicate to a damages award. (Pl.'s Resp. Defs.' Mot. Dismiss at 5.) The government fails to reply to this argument in its reply brief (and abandons reliance on Rule 12(b)(1)), thereby conceding it. *See In re LaMont*, 740 F.3d 397, 410 (7th Cir. 2014) (failure to respond to an argument results in waiver); *United States v. Farris*, 532 F.3d 615, 619 (7th Cir. 2008) (failure to respond to an argument in a reply brief constitutes waiver).

For purposes of a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts as true all well-pleaded facts, and draws all reasonable inferences in the plaintiff's favor. *See Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016). To withstand a Rule 12(b)(6) motion, a complaint must comply with Rule 8 by containing "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

The government argues that Daoud fails to state an equal-protection claim because age-based distinctions like MOD-15 are subject to rational-basis review, a highly deferential standard that is met here on the facts pleaded in the amended complaint. When examining an equal-protection claim under the Fifth Amendment, the Court first determines whether the regulation at issue affects a fundamental right or targets a suspect class. *Lopez Ramos v. Barr*, 942 F.3d 376, 380-81 (7th Cir. 2019). When no suspect class or fundamental right is involved, as is the case here, the Court employs a rational-basis test to determine whether the regulation is constitutional. *Id.* at 381; *see also Laborers Loc. 236, AFL-CIO v. Walker*, 749 F.3d 628, 640 (7th Cir. 2014) ("Government line-drawing that does not infringe a fundamental right and is not based on a suspect classification is subject only to rational-basis review."). Daoud alleges in the amended complaint that it was "not rational" for defendants to keep MOD-15 in place for over a year after persons age 65 and over became eligible for COVID-19 vaccines without replacing that regulation with a vaccine requirement for all persons seeking deployment. (1st Am. Compl. ¶ 18.) In response to the government's motion, Daoud concedes that the rational-basis standard applies to MOD-15 and that its implementation and enforcement up to December 2020 was rational but contends that its continued enforcement after that month was irrational in view of what he calls the "widespread" availability of vaccines.

When applying the rational-basis standard, "courts presume the constitutionality of the government's classification, and it will not be set aside if any state of facts reasonably may be conceived to justify it." *Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir. 1992)

3

(citations omitted). In order to survive a motion to dismiss for failure to state an equal-protection claim, "a plaintiff must allege facts sufficient to overcome th[is] presumption of rationality." *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 639 (7th Cir. 2007) (internal punctuation and citation omitted); *see also Mayle v. United States*, 891 F.3d 680, 687 (7th Cir. 2018) (to proceed on a Fifth Amendment equal-protection claim, a plaintiff "must plausibly allege government action wholly unrelated to any legitimate state objective") (internal punctuation and citation omitted). Complaints like Daoud's, accordingly, must contain some fact that, if proven, would suggest irrationality. The facts set out in the amended complaint fail to do so.

MOD-15, which is attached to Daoud's complaint, states in an introductory paragraph that the changes it made to fitness standards were "based on non-discriminatory data regarding the currently known morbidity and mortality rates for COVID-19, tied to the force protection concern that those individuals pose an unacceptable risk to the force and risk of overwhelming the limited medical resources in a theater of combat." (1st Am. Compl., Ex. A, at 4.)[3] It is beyond dispute that the prevention of death and serious illness during deployments and the conservation of medical resources in combat theaters are legitimate governmental interests. To achieve those ends, Central Command rationally restricted eligibility for employment in the AOR to persons under the age of 65. Indeed, included in the very text of the CDC web page printout that Daoud attaches to his complaint are the following facts: "[t]he risk for severe illness with COVID-19 increases with age, with older adults at highest risk"; "[o]lder adults are more likely to get very sick from COVID-19"; "[g]etting very sick means that older adults with COVID-19 might need hospitalization, intensive care, or a ventilator to help them breathe, or they might even die"; and "[t]he risk increases for people in their 50s and increases in 60s, 70s, and 80s." (1st Am. Compl., Ex. C, at 1.) And, as the government notes, MOD-15 was enacted in April 2020, well before the availability of COVID-19 vaccines.[4] The exclusion of persons age 65 and over from employment that involved deployment to the AOR therefore was undoubtedly rationally related to the goals of preventing death and serious illness and conserving medical resources there.

Daoud's focus, however, is not on the facts that existed at the time MOD-15 was enacted, but on the facts that existed thereafter. He asserts that his claims for damages and declaratory relief should be allowed to proceed because circumstances changed over the course of the COVID-19 pandemic due to the availability of vaccines. Daoud cites a recent district-court decision, *Halgren v. City of Naperville*, No. 21 C 5039, 2021 WL 5998583, at *25 (N.D. Ill. Dec. 19, 2021), in turn citing *United States v. Carolene Products Co.*, in which the Supreme Court stated as follows:

> Where the existence of a rational basis for legislation whose constitutionality is attacked depends upon facts beyond the sphere of judicial notice, such facts may

---

[3] While the Court refers to the purposes explicitly stated in MOD-15, the rational basis "does not have to be the one lawmakers actually had in mind; it is enough that the basis is conceivable or imaginable." *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 826 (7th Cir. 2019).

[4] Daoud alleges that "COVID-19 vaccines were first available for adults over the age of sixty-five (65) in December, 2020." (1st Am. Compl. ¶ 16.)

4

> properly be made the subject of judicial inquiry, and the constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased to exist.

304 U.S. 144, 153-54 (1938) (citation omitted). In Daoud's view, MOD-15 reached the end of its rationality "shelf life" when vaccines became widely available. He reasons that "[f]ully-vaccinated persons have a ninety-four percent (94%) reduction in hospitalizations compared to non-vaccinated persons of the same age. Thus, at that time, [December 2020], the logical distinction for the government to make was not an age[]-based approach, but rather vaccinated versus unvaccinated." (Pl.'s Resp. Defs.' Mot. Dismiss at 7.) The Court also takes note of Daoud's allegation that, as the first group that was eligible for vaccines, fully-vaccinated persons age 65 and over were "more immune from COVID-19 than younger, unvaccinated persons" whom defendants allowed to be deployed to the AOR. (1st Am. Compl. ¶ 17.)

In reply, the government maintains that "there is reason to doubt the viability of the changed-circumstances doctrine" in that it was "articulated nearly a hundred years ago"—largely with respect to economic regulations—and has been applied "very sparingly" ever since. (ECF No. 17, Defs.' Reply at 2.) The government also questions the propriety of applying the doctrine in the context of responses to a public-health emergency. The Court will assume for present purposes, however, that the doctrine remains viable and applicable to the factual scenario set out in the complaint.

Daoud's argument boils down to the assertion that at some point during the COVID-19 pandemic, a vaccination requirement began to make more sense than an age-based restriction. But that notion is not equivalent to a suggestion of the *irrationality* of an age-based restriction. *See Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 316 (1976) ("That the State chooses not to determine fitness more precisely through individualized testing after age 50 is not to say that the objective of assuring physical fitness is not rationally furthered by a maximum-age limitation."); *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1010 (7th Cir. 2019) ("Rational-basis review tolerates overinclusive classifications, underinclusive ones, and other imperfect means-ends fits."). Daoud relies heavily on his allegation, drawn from the CDC web page printout attached to his complaint, that fully-vaccinated persons age 65 and older show a 94 percent reduced risk of hospitalization. The CDC web page, however, is dated February 21, 2022; as the government points out, the statement is based on our *current* understanding of vaccine effectiveness. Nothing in the complaint connects this knowledge to December 2020, when vaccines were just beginning to become available, so his contention that it was "logical" to move to a vaccine-based approach "at that time," (Pl.'s Resp. Defs.' Mot. Dismiss at 7), does not follow. And even when it became known at some point in the months thereafter that vaccines reduced hospitalization risk to such a great extent and rendered persons 65 and older "more immune" from COVID-19 than younger, unvaccinated persons, as Daoud alleges, those facts still do not indicate that the age restriction became irrational. In fact, it was entirely rational for Central Command to have chosen to await comprehensive data regarding the effectiveness of COVID-19 vaccines before revisiting its regulation. The complaint simply does not plausibly suggest that vaccination-based restrictions to the exclusion of other restrictions were the sole rational approach to

preventing death and serious illness and conserving medical resources in the AOR.[5] The allegations about the purported irrationality of MOD-15's age restriction (including Daoud's wholly conclusory assertion without elaboration that it "actually had a negative impact on public health," (1st Am. Compl. ¶ 20)), are insufficient to overcome the presumption of MOD-15's rationality coupled with the legitimate governmental objectives discussed above, to which it is clearly related. Therefore, the Court will grant the government's motion to dismiss.

The dismissal will be with prejudice. Prior to the filing of the current motion, Daoud took advantage of one opportunity to amend the complaint in response to the government's arguments. He does not request leave to amend at this juncture, and in any event it appears that amendment would be futile. Leave to amend should be freely given, but district courts have broad discretion to deny such leave where it would be futile. *Jackson v. Bloomfield Police Dep't*, 764 F. App'x 557, 558 (7th Cir. 2019).

## CONCLUSION

Defendant's motion to dismiss [15] is granted. This action is dismissed with prejudice. Civil case terminated.

**DATE:** July 27, 2022

*(signature)*

**Hon. Ronald A. Guzmán**
**United States District Judge**

---

[5] It is noteworthy that in the very printout Daoud relies upon, the CDC—in spite of the widespread availability of vaccines—continues to recommend for older adults a multifaceted approach to COVID-19 protection that entails vaccinations in addition to mask-wearing, limitation of in-person interactions, keeping a distance from others, hand-washing, and disinfecting surfaces. (1st Am. Compl., Ex. C., at 2.)